IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF OKLAHOMA

(1) AMY NEWTON,                             )
                                            )
       Plaintiff,                           )
                                            )
v.                                          )   Case No.   18-CV-272-SPS
                                            )
(1) ATLAS ROOFING CORPORATION,              )
a Mississippi Corporation,                  )
                                            )
       Defendant.                           )

## COMPLAINT

Plaintiff Amy Newton ("Newton"), for her causes of action against Defendant Atlas Roofing Corporation ("Atlas"), alleges and states:

### The Parties

1. At all relevant times, Newton lived in Lonegrove, Oklahoma and worked in Ardmore, Oklahoma.

2. At all relevant times, Atlas has been a Mississippi corporation with its principal place of business in Meridian, Mississippi.

### Jurisdiction and Venue

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1332 and 42 U.S.C. § 2000e-5 because the parties are completely diverse and Newton's Title VII claims raise a federal question.

4. Venue is proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.

5. Newton has exhausted her administrative remedies under Title VII by (1) timely filing a charge of discrimination with the EEOC; and (2) timely commencing this lawsuit within 90 days of the EEOC's Notice of Suit Rights.

## Facts

6. On December 15, 2015, Atlas hired Newton as a Customer C.A.R.E. Specialist.

### Atlas' Treatment of Women

7. Atlas, particularly its Ardmore location, has a mostly male workforce. And Atlas' corporate culture is dominated by men—creating an uncomfortable environment for female employees and making it difficult for women to succeed.

8. Women at Atlas are subject to the regular exhibition of pornography in the workplace and the expectation to frequent strip clubs with male coworkers during travel and at company parties.

9. Making these conditions harder for Newton, Atlas did not allow employees' spouses to travel and attend most company parties—leaving the women, including Newton, often surrounded by men in compromising circumstances.

10. These conditions permeated Atlas, company-wide.

### Newton Upsets Atlas' Male-Dominated Culture

11. Newton struggled to succeed in Atlas' male-dominated environment, but she tried hard to fit in. This was her first job after college, so success was important to her

career.

12. At first, Newton excelled, and her supervisors appeared happy with her work—including her immediate supervisor, Rick Stevenson ("Stevenson").

13. In fact, in May 2016, Stevenson promoted Newton to the position of Quality Manager.

14. In or around the summer of 2016, Newton decided that she needed to set some limits on her efforts to fit in. Regularly attending company parties that included trips to strip clubs and not being allowed to bring her husband to after-work functions where Newton was surrounded by men made Newton feel vulnerable and strained her marriage.

**Stevenson and Others Harass Newton**

15. The workplace environment changed when Newton quit attending after-work functions that regularly included trips to strip clubs, where she knew that she would be uncomfortable and where her husband was not welcome.

16. Soon after Newton quit attending these after-work functions, Stevenson retaliated against her for her implicit challenge to Atlas' male-dominated culture.

17. In late 2016 and into 2017, Stevenson told several employees—including Jennifer Carlile, Jason Ivey, and Cynthia Glazner—that Newton was not to be trusted.

18. Stevenson also informed Newton that others were talking negatively about her.

19. In September 2016, after Newton had gone to Daingerfield, Texas with

Jennifer Carlile ("Carlile") and Manuel Flores ("Flores"), Stevenson called Carlile, Newton, and Flores into a meeting.

20.     Stevenson said that many people from Daingerfield had accused Carlile, Newton, and Flores of being lazy. Stevenson yelled at them and said that they were an embarrassment to Atlas' Ardmore plant. Later, Stevenson then gave the two women less favorable shifts—without changing their male coworker's shift.

21.     Soon after these events, Stevenson told Newton and Carlile that 6:30 a.m. plant meetings were being canceled. But the meetings continued; Stevenson just excluded Newton and Carlile.

22.     Stevenson constantly undermined Newton with employees in her department.

23.     Stevenson and other males made inappropriate sexual comments about Newton—including comments about whether Dale Rushing, the Vice President of Roofing, paid for Newton's "boob job."

24.     Bob Cipriano ("Cipriano"), Atlas' Vice President of Human Resources, also publicly discussed Newton's "boob job."

25.     These actions were all based on Newton's gender and were in retaliation for Newton's having stopped participating in male-dominated after-work activities, such as attending strip clubs.

**Newton's Formal Complaint**

26.     Newton discovered that Stevenson was making threats against her from

another Atlas' employee.

27. Newton approached Kinchata Hensley ("Hensley"), the human resources representative for Atlas' Ardmore facility, for advice about how to deal with Stevenson's hostile words and actions.

28. Hensley actually had first-hand knowledge of Stevenson's threats against Newton because Stevenson recently asked Hensley if she knew anyone who would "off" Newton. Specifically, Stevenson asked Hensley if Hensley's mom would do so.

29. Hensley helped Newton file a formal complaint about Stevenson's threats—threats that were motivated by Newton's gender and by Stevenson's impression that Newton threatened Atlas' male-dominated culture.

30. Hensley also informed Cipriano about Stevenson's comments.

31. Cipriano told Hensley that he was sure Stevenson was joking, but that Hensley should talk to Stevenson about these issues and tell him that he can't say things like that.

32. At the close of the conversation, Hensley asked Cipriano to keep their conversation confidential.

33. When Hensley confronted Stevenson about his threats, he denied that he made any direct threats against Newton, but he admitted to threatening to cause his daughter to physically assault Newton.

34. Although Atlas conducted no further investigation in response to Newton's formal complaint, a meeting was scheduled for June 20, 2017.

35. The night before her June 20 meeting, Newton saw Stevenson at Two Frogs

Grill in Ardmore, Oklahoma, having dinner with Cipriano—the very person who she had hoped would hold Stevenson accountable for his inappropriate workplace behavior.

**June 20, 2017 Meeting**

36.  On June 20, 2017, Newton appeared for what she anticipated was her opportunity to confront Stevenson in relation to her formal complaint.

37.  Newton, Stevenson, Cipriano, Marla Bullard (an intermediate level human resources representative), and Hensley attended the meeting.

38.  Although Newton was permitted to air her grievances at the beginning of the meeting, the topic changed abruptly.

39.  Newton was asked to sign some company policies, and Stevenson falsely accused Newton of going above his head and saying bad things about him.

40.  Newton denied the allegations.

41.  Rather than address Newton's complaints, Stevenson forced Newton to defend herself for the rest of the meeting.

**Three Weeks Later, Atlas Fires Newton for Pretextual Reasons**

42.  July 10, 2017, Newton received a letter, informing her that she was being terminated.

43.  The letter falsely alleged that Newton had stood at an operator's station ("the coater") too long and for inappropriately touching an employee.

44.  All of these reasons are false and are pretext for Atlas' discrimination against Newton because of her gender, because of her implicit challenged to Atlas' male-

dominated culture, and because of her standing up for herself in the workplace.

## **COUNT ONE—Sex Discrimination**

45. All the above paragraphs are incorporated by reference.

46. Newton, a woman, is within a protected classification under Title VII of the Civil Rights Act of 1964, as amended.

47. Despite Newton's being qualified for her job and satisfactorily performing her duties, Atlas fired Newton.

48. Newton's sex was a motivating factor in Atlas' decision to fire her.

49. Atlas' false allegations that Newton was terminated for legitimate reasons were pretext for discrimination.

50. Because Atlas fired Newton, Newton has suffered and continues to suffer emotional and mental distress, harm to her professional reputation, humiliation, economic loss, and loss of enjoyment of life all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

Wherefore, Newton prays for judgment against Atlas as follows:

(1) That Atlas be ordered to make Newton whole by providing all the remedies and relief authorized by 42 U.S.C. § 2000e-5(g);

(2) That Atlas be ordered to reinstate Newton to her prior position at the same rate of pay and benefits or, in lieu of reinstatement, that Atlas be ordered to award Newton front pay for a period of years as determined by the Court to be just and equitable under the circumstances;

(3) That Atlas be ordered to pay Newton's costs and a reasonable attorney's fee under 42 U.S.C. §2000e(5)(k); and,

(4) For such other relief as the Court deems just and proper.

## COUNT TWO—Hostile-Work-Environment Sexual Harassment

51. All the above paragraphs are incorporated by reference.

52. Newton, a woman, is within a protected classification under Title VII of the Civil Rights Act of 1964, as amended.

53. Newton was subject to unwanted sexual harassment that was sufficiently severe and pervasive to alter the terms and conditions of her employment.

54. Atlas' above-described culture that was hostile to women, including Newton, pervaded Atlas at every level, putting Atlas' executives on notice of these issues and making Atlas responsible for the culture.

55. Because Atlas subjected Newton to a hostile work environment, Newton has suffered and continues to suffer emotional and mental distress, harm to her professional reputation, humiliation, economic loss, and loss of enjoyment of life all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

Wherefore, Newton prays for judgment against Atlas as follows:

(1) That Atlas be ordered to make Newton whole by providing all the remedies and relief authorized by 42 U.S.C. § 2000e-5(g);

(2) That Atlas be ordered to reinstate Newton to her prior position at the same rate of pay and benefits or, in lieu of reinstatement, that Atlas be ordered to

  award Newton front pay for a period of years as determined by the Court to be just and equitable under the circumstances;

(3) That Atlas be ordered to pay Newton's costs and a reasonable attorney's fee under 42 U.S.C. §2000e(5)(k); and,

(4) For such other relief as the Court deems just and proper.

## COUNT THREE—Retaliation

56. All the above paragraphs are incorporated by reference.

57. By filing a formal complaint about Stevenson's actions that were motivated by Newton's gender and Stevenson's belief that Newton posed a threat to Atlas' male-dominated culture, Newton engaged in activity that is protected under Title VII of the Civil Rights Act of 1964, as amended.

58. Despite Newton's being qualified for her job and satisfactorily performing her duties, Atlas fired Newton.

59. Newton's protected activity was a motivating factor in Atlas' decision to fire her.

60. Atlas' false allegations that Newton was terminated for legitimate reasons were pretext for discrimination.

61. Because Atlas fired Newton, Newton has suffered and continues to suffer emotional and mental distress, harm to her professional reputation, humiliation, economic loss, and loss of enjoyment of life all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

Wherefore, Newton prays for judgment against Atlas as follows:

(1) That Atlas be ordered to make Newton whole by providing all the remedies and relief authorized by 42 U.S.C. § 2000e-5(g);

(2) That Atlas be ordered to reinstate Newton to her prior position at the same rate of pay and benefits or, in lieu of reinstatement, that Atlas be ordered to award Newton front pay for a period of years as determined by the Court to be just and equitable under the circumstances;

(3) That Atlas be ordered to pay Newton's costs and a reasonable attorney's fee under 42 U.S.C. §2000e(5)(k); and,

(4) For such other relief as the Court deems just and proper.

s/Jonathan M. Irwin  
Woodrow K. Glass, OBA#15690  
Jonathan M. Irwin, OBA#32636  
Barret T. Bowers, OBA#30493  
1601 36th Avenue NW  
Norman, Oklahoma 73072  
(405) 360-9700  
(405) 360-7902 (fax)  
woody@wardglasslaw.com  
**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEYS' LIEN CLAIMED**